UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ETIENNE PELLEGAL                              CIVIL ACTION

VERSUS                                        NO. 08-0030

LINCOLN ELECTRIC COMPANY, ET AL               SECTION: "B"

ORDER AND REASONS

For the following reasons **IT IS ORDERED** that the plaintiff's motion to remand is **GRANTED**.

BACKGROUND

Etienne Pellegal ("Plaintiff"), between the ages of sixteen and forty-three, worked as a welder.[1] His career came to an end when he was diagnosed with laryngeal cancer in June 2003.[2] Accordingly, on April 28 2006, the plaintiff filed suit in the Civil District Court for the Parish of Orleans, naming thirty defendants, which included twenty-four welding companies and six oil companies.[3] The initial complaint alleged that exposure to manganese was one of the factors that caused the cancer and other

---

[1] Rec. Doc. 34, part 3, pg. 2.

[2] Id.

[3] Rec. Doc. 43, pg. 2.

ailments, and also that the defendants negligently failed to warn of such danger.[4] In response, one of the defendants, Nichols Wire, Inc., on February 26, 2007, filed an answer that stated:

> Defendant avers that if it is determined that Plaintiff was exposed to any alleged products sold by Defendant which were acquired from, sold to, sold by, or used on behalf of the United States of America or of the State of Louisiana, then Plaintiff's claims are barred under the doctrine of sovereign immunity.[5]

Further, on December 3, 2007, the plaintiff returned a Fact Sheet, at the request of defendants, which for the first time revealed that the plaintiff had worked at Avondale Shipyards for six to twelve months - during the 1979-80 time frame.[6] On December 7, 2007, the plaintiff admitted in a videotaped deposition that he welded on U.S. Navy vessels while employed at Avondale Shipyards.[7] The welding rods, designated for Navy use, are required to meet certain military specifications ("MIL specs") and are procured by the Naval Sea Systems Command ("NAVSEA"). Accordingly, the defendants moved to remove the case on January 2, 2008, "alleging that, because plaintiff worked on Navy ships utilizing welding rods which were constructed pursuant to Navy specifications, they are entitled to federal jurisdiction

---

[4] Rec. Doc. 65, Exhibit A, ¶¶ 20, 22-24.

[5] Rec. Doc. 34, Exhibit C, ¶ XCI.

[6] Rec. Doc. 43, Exhibit D.

[7] Id. Exhibit E.

pursuant to the federal officer removal statute."[8]

**LAW AND ANALYSIS**

**A.   Timeliness**

The thirty day time limit under 28 U.S.C. § 1446(b) is not triggered when the initial complaint does not contain information indicating the availability of removal. See Bosky v. Kroger Texas, L.P., 288 F.3d 208, 210 (5th Cir. 2002). In cases where the "action is not initially removable, the defendant has [thirty] days [to remove the case] after [receiving] a copy of 'other paper from which it may first be ascertained' that the case is or has become removable." S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996) (citing 28 U.S.C. 1446(b)). "The Fifth Circuit has indicated that the 'other paper' conversion requires a *voluntary act by the plaintiff*. See Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 254 (5th Cir.1961). As such, an "affidavit, created entirely by the defendant, is not 'other paper' under section 1446(b) and cannot start the accrual of the [thirty day] period for removing." S.W.S. Erectors, 72 F.3d at 494. Accordingly, remand is necessary when the defendant does not file a timely notice of removal. See Royal v. State Farm Fire & Cas. Co., 685 F.2d 124, 127 (5th Cir. 1982).

In this case, removal was timely. Nothing in the initial

---

[8] Rec. Doc. 34, part 3, pg. 3.

complaint indicated the availability of a federal defense. <u>See</u> <u>Bosky</u>, 288 F.3d at 210. Accordingly, the case did not become removable until December 3, 2007, when the defense received an *other paper* in the form of plaintiff's Fact Sheet revealing that he had worked for Avondale Shipyards during the 1980s. <u>See</u> <u>S.W.S.</u> <u>Erectors</u>, 72 F.3d at 494.

The plaintiff incorrectly asserts that the thirty day limit began to run on February 26, 2007, when one of the co-defendants, Nichols Wire, Inc., asserted an answer containing a "placeholder defense of sovereign immunity."[9] Nevertheless, the Fifth Circuit has made it clear that only an act by a plaintiff, not a defendant, can trigger the section 1446 time limit. <u>See</u> <u>Gaitor</u>, 287 F.2d at 254 (*other paper* conversion requires a *voluntary act by the plaintiff*); <u>S.W.S. Erectors</u>, 72 F.3d at 494 (a defendant's affidavit cannot constitute *other paper* for purposes of triggering the thirty day time limit). As such, Nichols Wire's answer did not trigger the thirty day limit, but rather was triggered on December 3, 2007 when the defendants received *other paper* in the form of plaintiff's Fact Sheet. <u>See</u> <u>id.</u> Accordingly, the January 2, 2008 removal was timely because it was filed within thirty days of December 3, 2007. <u>See</u> 28 U.S.C. § 1446(b).

**B.   Federal Officer Jurisdiction**

In order to invoke the Federal Officer Removal Statute, 28

---

[9] Rec. Doc. 43, pg 6.

U.S.C. § 1442(a)(1), the removing party must show that: (a) the removing party qualifies as a *person* under the statue; (b) the defendants acted under the direction of a federal office and that a causal nexus exists between the defendants' actions under color of federal officer and the plaintiff's claims; and (c) the removing defendant asserts a colorable federal defense. <u>Mesa v. California</u>, 489 U.S. 121, 131-32 (1989). The purpose of the Federal Officer Removal Statute is to make a federal forum available to a federal officer, or an individual acting under a federal officer's authority. <u>Arizona v. Manypenny</u>, 451 U.S. 232, 241 (1981).

First, the defendants meet the definition of a *person* for purposes of the <u>Mesa</u> test. All the defendants are corporations,[10] which are "considered 'persons' for purposes of removal under Section 1442." <u>Hampton v. Owens-Illinois</u>, No. 06-10929, 2007 WL 274794, at *1 (E.D. La. Jan. 29, 2007) (citing <u>Winters v. Diamond Shamrock Chemical Co.</u>, 149 F.3d 387, 397 (5th Cir. 1998)).

In <u>Watson v. Philip Morris Companies, Inc.</u>, the United States Supreme Court held that a company is not entitled to federal jurisdiction under § 1442(a)(1) merely because "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." 127 S. Ct. 2301, 2304 (2007). In the multi-district litigation ("MDL") - where there was a

---

[10]  <u>See</u> Rec. Doc. 65, Exhibit A at ¶¶ 20, 22.

group of cases with facts analogous to the present dispute - a
major issue was whether the defendant welding rod manufacturers
acted under the direction of the federal government in the
manufacture of their product. In re: Welding Rod Products
Liability Litigation, No. 1:03-CV-17000, 2004 WL 1179454, at *8
(N.D. Ohio May 21, 2004).[11] The defendants argued that remand was
necessary because NAVSEA developed MIL specs governing almost
every aspect of the welding  rods provided by the defendants,
which forced defendants to create "two distinct formulations,"
one meeting commercial specifications and one meeting NAVSEA
specifications. Id. at *11. Further, the MIL specs provided
warning language. In response, the plaintiffs argued that the
defendants were not *acting under* NAVSEA because the rods had
already been available on the open market and that there was no
significant difference between the military and commercial
products. Id. In light of these arguments, the MDL court decided
that removal was appropriate because this was merely a "threshold

---

[11] Although the MDL case is not from this Circuit, and thus
not binding, it is very persuasive because the facts and
arguments are analogous. The plaintiff alleges that this case is
not applicable because it pertains to manganese-related injuries,
and plaintiff's injury did not result from manganese exposure.
Nevertheless, the plaintiff's original complaint stated that
manganese exposure caused/contributed to his injury (see Rec.
Doc. 65, Exhibit A at ¶¶ 20, 22), and thus later amendments,
claiming that the injury did not result from manganese, cannot be
used to defeat removal. See Nolan v. Boeing, 919 F.2d 1058, 1063
n.5 (5th Cir. 1990). Further, NAVSEA dictates almost every
chemical component of the welding rods, and thus the MDL case was
not manganese-specific.

jurisdictional inquiry"and it was unnecessary at that time to determine whether the defendants' military contractor defense would prevail on the merits. Id. at 12.[12]

In the present case, the plaintiff and defendants essentially raise the same arguments as those in the MDL case. The plaintiff points to the sales literature of one of the defendants, Lincoln Electric, which shows that MIL spec welding rods are sold not only to the Navy, but also commercially.[13] In response, the defense argues that the specifications force them to have two distinct formulations: one for consumers and one for the military.[14] Additionally, the defendant noted that the welding rods are packaged in accordance with MIL-W-10430D, which requires a specific warning label.[15] If this were an inquiry into

---

[12] See also Jefferson County v. Acker, 527 U.S. 423, 431 (1999) (In order to remove under 28 U.S.C. 1442(a)(1), it is not necessary to demonstrate that the defendant's federal defense would prevail); Akin v. Big Three Indus., 851 F. Supp. 819, 823 (E.D. Tex. 1994) (For removal purposes, it is irrelevant whether the defendant will actually prevail on their government contractor defense).

Also note that the MDL case focused largely on whether the defendants raised a colorable federal defense. Nevertheless, this analysis is applicable to the present dispute because the MDL case notes that the question of whether the defendant was acting under federal direction "is itself largely subsumed under the first two elements of the military contractor defense." In re: Welding Rod Products Liability Litigation, 2004 WL 1179454, *10.

[13] See Rec. Doc. 34, Exhibits H & I.

[14] Id. Exhibit F.

[15] Rec. Doc. 43, pg. 11.

7

the merits, the case could go either way. Nevertheless, this is not a merit-based analysis, but rather a question of whether federal jurisdiction exists. <u>See</u> <u>Jefferson</u>, 527 U.S. at 431; <u>Akin</u>, 851 F. Supp. at 823. Accordingly,  it is necessary to follow the lead of the MDL and conclude that the defendants were acting under federal direction.

Nevertheless, the defendants fail to produce evidence sufficient to demonstrate that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims. Removal under § 1442(a)(1) is proper "when a government contractor builds a product pursuant to [U.S. Government] specifications and is later sued because compliance with those specifications allegedly causes personal injury." <u>Akin</u>, 851 F. Supp. at 823-24; <u>see</u> <u>also</u> <u>Winters</u>, 149 F.3d 387, 397, 404 (5th Cir. 1998) (the Fifth Circuit affirmed the trial court holding that a causal nexus exists when the defendants are "'acting under color of federal authority' *when committing* the acts that allegedly led to" injury) (emphasis added). As such, for a causal nexus to exist the defense must show that their product actually caused the injury. <u>See</u> <u>Akin</u>, 851 F. Supp. at 823-24.

In the present case, the defense does not put forth any evidence indicating that their product was used by Avondale during 1979-80, the time period when the plaintiff worked there.

The defendants rely upon the declarations of David Fink and Harry Sadler to establish a causal nexus, yet neither provides evidence related to 1979-80.[16] In response to the plaintiff's assertion that there is no proof that the defendants' products were used by the plaintiff while he was working at Avondale, the defense relies upon Charles Null's testimony that military specifications have existed since the 1950s, at a minimum, and that all products purchased by the Navy are required to meet such specifications.[17] Nevertheless, evidence that Avondale has been using MIL spec welding rods since the 1950s does not demonstrate that any of the defendants actually supplied welding rods to Avondale during 1979-80, and thus there is no proof that the defendants' products caused the injury. As such, no causal nexus exists. See id.

Accordingly, the defense fails to satisfy the second prong of the Mesa test, and thus removal is in order. There is no need to determine whether the defendant satisfies the third prong of the Mesa test.

---

[16] Rec. Doc. 57, pg. 5; see also Rec. Doc. 34, Exhibits F & J.

[17] Rec. Doc. 65, Exhibit D, 62:5-12, 54:17-22.

**CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that the plaintiff's motion to remand is **GRANTED.**

New Orleans, Louisiana, this <u>19th</u> day of June, 2008.

_____
IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE